IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARILYN R. SUGALSKI | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| MANUFACTURERS AND TRADERS | : | NO. 09-3001 |
| TRUST COMPANY, t/a M&T BANK | : | |

**SURRICK, J.**                                           **JULY  16  , 2012**

<u>**MEMORANDUM**</u>

Presently before the Court are Defendant's Cross-Motion for Summary Judgment (ECF

No. 20) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 22).[1]  For the following

reasons, Plaintiff's Motion will be granted in part and denied in part, and Defendant's Motion

will be denied.

**I.      BACKGROUND**

The undisputed facts are as follows.  On April 6, 1998, David McCarthy entered into an

employment agreement ("McCarthy Agreement") with Provident Bank of Maryland

("Provident") to become the President and CEO of Court Square Leasing Company ("Leasing

Co"), which Provident agreed to establish as a wholly-owned subsidiary.  (McCarthy Agreement,

Def.'s Summ. J. Mem. Ex. B, ECF No. 21.)  The McCarthy Agreement provides that if

McCarthy is terminated for a reason other than cause, McCarthy is entitled to receive a payment

as if McCarthy were the equity owner of twenty-five percent of Leasing Co ("imputed interest")

---

[1]  At the Initial Pretrial Conference, the parties agreed that the McCarthy Settlement
Agreement should be made a part of the record in this case, that this matter would be submitted
to the Court in cross-motions for summary judgment, and that since the facts related to this
matter were largely undisputed, little discovery was necessary.

and Provident were purchasing such imputed interest.  (*Id.* at ¶ 5.1-5.2.)  The McCarthy

Agreement sets forth a specific formula for calculating the imputed interest.  McCarthy is not

entitled to the imputed interest if Leasing Co terminates him for cause.  (*Id.* at ¶ 5.7.)[2]

On April 14, 1998, Plaintiff entered into an employment agreement ("Sugalski

Agreement") with Provident to serve as a director of Leasing Co.  (Def.'s Summ. J. Mem. Ex.

C.)  The Sugalski Agreement provides, in relevant part:

> 4.1     Within 45 days after the Determination Date as defined in Paragraph 4.2, and provided that Employee is employed by Leasing Co on such Determination Date, [Provident] will make a payment to Employee as if Employee were the equity owner of 2% of Leasing Co (the "Imputed Interest") and [Provident] were purchasing such Imputed Interest . . . .

> 4.2     The "Determination Date" is the date David McCarthy is paid by [Provident] for his imputed interest in Leasing Co pursuant to the terms of this Agreement with [Provident] dated April 6, 1998.  David McCarthy will be paid for his imputed interest in Leasing Co on the earliest to occur of the following events:

>> a.     Leasing Co terminates David McCarthy's employment for a reason other than cause . . . .

(Sugalski Agreement ¶¶ 4.1-4.2.)

The Sugalski Agreement also provides that in the event Plaintiff's employment is

terminated for a reason other than cause, Leasing Co would continue to pay Plaintiff her salary

---

[2]   Termination for "cause" exists if:

Employee dies or if Leasing Co terminates Employee because of a material loss to Leasing Co caused by Employee's willful, intentional and continued failure to substantially perform stated duties (other than such failure resulting from incapacity due to physical or mental illness), personal dishonesty, willful violation of any law, rule, regulation (other than traffic violations or similar offenses) or final cease and desist order.

(McCarthy Agreement ¶ 6.3.)

for three months.  (*Id.* at ¶ 5.1.)  However, as "a condition to receiving that severance

compensation, Employee agrees to make no other claim against Leasing Co."  (*Id.*)

On January 21, 2005, Leasing Co terminated McCarthy's employment.  (Def.'s Admis.

Req. 15, Def.'s Summ. J. Mem. Ex. A.)  Following his termination, McCarthy demanded that

Provident pay him the imputed interest in accordance with his employment agreement.  Provident

refused to make the payment and subsequently filed a lawsuit seeking declaratory relief in the

United States District Court for the District of Maryland.  (Def.'s Summ. J. Mem. Ex. D.)  In that

lawsuit, Provident contended that McCarthy was terminated for cause and that it therefore did not

owe McCarthy his imputed interest.  McCarthy filed a counterclaim for breach of contract and

violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann. Lab.

& Empl. § 3-501, *et seq.*  (Def.'s Summ. J. Mem. Ex. E.)  Each of McCarthy's claims was

premised on his contention that Provident owed him the imputed interest because he was

terminated without cause.  He alleged that at the time of his termination, the imputed interest

owed to him in accordance with the formula set forth in the McCarthy Agreement was

$4,846,050.00.[3]

Provident filed a motion to dismiss McCarthy's MWPCL claim on the ground that the

---

[3] Provident's 2005 Form 10-K describes the lawsuit as follows:

In April 2005, the Corporation became a party to litigation where a former employee
alleges a breach by the Corporation of a previously executed employment contract.
The former employee claims that, under the terms of the contract, he is due a so-
called "imputed interest payment" valued at approximately $2 million.  Further,
under a theory of damages put forth, he asserts that he is owed a multiple of the
imputed interest payment.   The aggregate damage award sought against the
Corporation in this action is approximately $6 million.

(Def.'s Summ. J. Mem. Ex. H.)

imputed interest payment is not a "wage" for purposes of the statute.  The motion was denied.

*See Provident Bank of Md. v. McCarthy*, 383 F. Supp. 2d 858 (D. Md. 2005).  On June 29, 2006,

Provident and McCarthy settled their dispute.  (McCarthy Settlement Agreement, Def.'s Summ.

J. Mem. Ex. F.)  Provident agreed to pay McCarthy $1.25 million.[4]  The settlement agreement

states, in relevant part:

> Provident and McCarthy understand and agree that this Agreement pertains to
> disputed claims set forth in the Lawsuit, and that neither the execution of this
> Agreement, nor the payment or receipt of the settlement amount described herein are
> to be construed as an admission of liability on the part of either Party with respect to
> any of the disputed claims set forth in the Lawsuit, and that each Party, in fact,
> expressly denies liability to the other Party and intends merely to avoid litigation and
> to buy their respective peace without further expense.  In particular, the Parties
> understand and acknowledge that this Agreement should not be construed as an
> express or implied admission by Provident or an agreement by the Parties that
> McCarthy was not terminated "for cause" or that a sufficient basis for a "for cause"
> termination did not exist.

(McCarthy Settlement Agreement ¶ D.)

On May 23, 2009, Defendant M&T Bank acquired Provident.  Three days later,

Defendant notified Plaintiff that her position would be permanently eliminated effective June 19,

2009, as a result of the acquisition.  (Pl.'s Mot. Summ. J. Ex. J, ECF No. 22.)  Defendant offered

Plaintiff four months of severance pay, rather than the three months that was outlined in the

Sugalski Agreement.  Plaintiff was later offered a different severance package, which included up

to six months pay.  These offers were expressly contingent on Plaintiff signing a general release

in favor of Defendant.  Plaintiff rejected these severance packages.  After Plaintiff learned about

her forthcoming termination and while she was still employed by Leasing Co, Plaintiff made a

---

[4] Provident's 2006 Form 10-K identified the settlement:  "In May 2006, the Corporation
settled litigation with a former employee for alleged breached of an executed employment
contract for $1.3 million."  (Def.'s Summ. J. Mem. Ex. G.)

demand for the payment of her imputed interest and severance benefits as provided in the

Sugalski Agreement.  On April 13, 2009, Plaintiff received an email, which denied her claim for

the imputed interest.  The email stated in relevant part:  "Because Dave McCarthy was

terminated for cause and never paid his imputed interest, any rights you had to imputed interest

payments is of no further force or effect."  (Pl.'s Mot. Summ. J. Ex. L.)  In addition, Plaintiff did

not receive any severance pay.

Plaintiff filed the instant Complaint against Defendant which includes claims for

violation of the MWPCL (Count One) and Breach of Contract (Count Two) (ECF No. 1).

Plaintiff and Defendant have each filed Motions for Summary Judgment.

## II.    LEGAL STANDARD

A party is entitled to summary judgment when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the [party] is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Fed. Home Loan*

*Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).  Where the nonmoving

party bears the burden of proof at trial, the moving party may identify an absence of a genuine

issue of material fact by showing the court that there is no evidence in the record supporting the

nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health*

*Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this

initial burden, the nonmoving party must set forth specific facts showing that there is a genuine

issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(noting that the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts").  The nonmoving party may not avoid summary

judgment by relying on speculation or by rehashing the allegations in the pleadings.  *Ridgewood*

*Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).  "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391

U.S. 253, 289 (1968)).  "We must construe the evidence in favor of the non-moving party, and

summary judgment must be denied if there exists enough evidence 'to enable a jury to reasonably

find for the nonmovant on the issue.'"  *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 (3d Cir. 2009)

(quoting *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009)).

Where, as here, the parties file cross-motions for summary judgment, "Rule 56(c) does

not mean that the case will necessarily be resolved at the summary judgment stage.  The court

must consider the motions separately.  Each party must still establish that no genuine issue of

material fact exists and that it is entitled to judgment as a matter of law."  *Atl. Used Auto Parts v.*

*City of Phila.*, 957 F. Supp. 622, 626 (E.D. Pa. 1997).

## III.    DISCUSSION

### A.    Breach of Contract

Addressing first Count Two of Plaintiff's Complaint, Plaintiff argues that Defendant

failed to pay her the imputed interest and severance benefits to which she was entitled as

provided in the Sugalski Agreement.

The McCarthy Agreement and the Sugalski Agreement both specifically provide that they

are governed by Maryland law.[5]  Maryland courts apply the principle of objective interpretation

of contracts.  *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 469 (Md. 2004);

*Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003) (citing

cases).  Under the objective test, the "written language embodying the terms of an agreement will

govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time

they entered into the contract, unless the written language is not susceptible of a clear and

definite understanding, or unless there is fraud, duress or mutual mistake."  *Long v. Maryland*,

807 A.2d 1, 8 (Md. 2002) (quoting *Slice v. Carozza Props., Inc.*, 137 A.2d 687, 693 (Md. 1958)).

"When the clear language of a contract is unambiguous, the court will give effect to its plain,

ordinary, and usual meaning, taking into account the context in which it is used."  *Sy-Lene*, 829

A.2d at 546 (citations omitted).

The interpretation of a contract, including the determination of whether a contract is

ambiguous, is a question of law for the court.  *United Servs. Auto. Ass'n v. Riley*, 899 A.2d 819,

833 (Md. 2006).  A contract is ambiguous if, "when read by a reasonably prudent person, it is

susceptible of more than one meaning."  *Id.* (quoting *Calomiris v. Woods*, 727 A.2d 358, 363

(Md. 1999)).  A "contract is not ambiguous simply because, in litigation, the parties offer

different meanings to the language.  It is for the court, supposing itself to be that reasonably

prudent person, to determine whether the language is susceptible of more than one meaning."

*Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007).

---

[5] "The validity, terms, performance and enforcement of this Agreement shall be governed by those internal laws of the State of Maryland which are applicable to agreements which are negotiated, executed, delivered and performed solely in the State of Maryland."  (McCarthy Agreement ¶ 9.11; Sugalski Agreement ¶ 7.11.)

1.    *Imputed Interest*

Defendant does not dispute that by acquiring Provident, it subjected itself to potential liability on Plaintiff's imputed interest claim.  The central issue for purposes of these summary judgment motions is whether the payment made by Defendant to McCarthy in accordance with the settlement agreement was payment "for his imputed interest."  Plaintiff argues that pursuant to the terms of her employment contract, her right to her imputed interest payment became due forty-five days after McCarthy settled his claim with Defendant.  On January 21, 2005, McCarthy was terminated from his employment with Leasing Co.  In response to Provident's complaint for declaratory relief, McCarthy brought a counterclaim against Provident to recover his imputed interest.  On June 29, 2006, Provident agreed to pay McCarthy $1.25 million to settle their dispute.  Plaintiff contends that she is entitled to her imputed interest if "David McCarthy is paid by [Provident] for his imputed interest in Leasing Co pursuant to the terms of his Agreement with [Provident] dated April 6, 1998."  Moreover, McCarthy is paid for his imputed interest if "Leasing Co terminates David McCarthy's employment for a reason other than cause."  Plaintiff argues that the settlement payment falls squarely within this contractual language.  Payment in settlement of McCarthy's claim for his imputed interest is equivalent to payment "for his imputed interest."  The Sugalski Agreement does not require that payment to McCarthy be "payment in full" or "payment which shall be designated as Imputed Interest."  Plaintiff argues that the Sugalski Agreement does not condition payment to Plaintiff on why, how or under what conditions McCarthy would be paid for his imputed interest.  Rather, any "payment for" McCarthy's imputed interest is sufficient.  According to Plaintiff, the undisputed facts are that McCarthy sued Defendant to recover his imputed interest, and Defendant paid McCarthy $1.25

million to settle that lawsuit.  Therefore, McCarthy was paid for his imputed interest.

Plaintiff argues that other circumstances involving the transactions favor her interpretation.  For example, the McCarthy Settlement Agreement does not contain a disclaimer that payment is not deemed imputed interest for purposes of Plaintiff's employment contract.  In addition, Provident's filings with the SEC support her claim.  Provident specifically noted in its 2005 Form 10-K that a former employee was suing the bank to collect his "imputed interest payment."  In 2006, Provident's Form 10-K stated that the bank had settled litigation with a former employee for $1.3 million.  Plaintiff maintains that Provident has therefore publicly acknowledged that McCarthy's settlement payment constituted payment "for his imputed interest."

Defendant argues that it did not breach the Sugalski Agreement because Plaintiff is not entitled to any imputed interest payment.  Defendant argues that the condition precedent to Plaintiff's claim has not been satisfied:  David McCarthy was never paid for his imputed interest. According to Defendant, Plaintiff's argument ignores McCarthy's settlement agreement, which specifically provides that the settlement amount should not be construed as an admission by Provident, either express or implied, that McCarthy was not terminated "for cause."  Plaintiff and Defendant agree that McCarthy was entitled to his imputed interest only if he was terminated for a reason other than cause.  Defendant argues that the settlement agreement does not say that McCarthy was terminated for a reason other than cause.  The settlement payment was made for the purpose of avoiding litigation and to resolve the lawsuit.  It was a compromise, and admitted nothing.  Defendant argues that since Defendant never paid McCarthy his imputed interest,  it has no obligation to pay Plaintiff her imputed interest.

9

Defendant contends that following Plaintiff's argument to its logical conclusion, if Provident paid even one dollar to McCarthy to settle the lawsuit, such payment would constitute a payment for his imputed interest and satisfy the condition precedent in her employment contract.  This interpretation overlooks the requirement that Provident, in fact, terminate McCarthy without cause before he collects his payment.  In this case, Provident paid McCarthy a sum significantly less than that which McCarthy demanded in his counterclaim.  Defendant argues that Plaintiff's construction mischaracterizes the terms of the settlement and divorces the payment from its proper context.

We are compelled to conclude that neither Plaintiff nor Defendant has established that there are no genuine issues of material fact.  While the record is undisputed as to the facts described above, what is absent from this record are facts from which it can be determined that David McCarthy was terminated for a reason other than cause.  Plaintiff is entitled to her imputed interest if McCarthy was "paid for" his imputed interest.  McCarthy would have been paid his imputed interest if Leasing Co terminated his employment for a reason other than cause.  Because the parties agreed that this matter would be submitted to the court on cross-motions for summary judgment with little discovery, we cannot determine based upon the present record whether McCarthy was terminated for cause or without cause.  As a result, we cannot determine whether any payment that McCarthy received was, or was not, payment for his imputed interest.

Provident's payment pursuant to the settlement agreement, and the recitals set forth therein, do not resolve this issue.  The agreement only says that it should not be construed as an admission by Provident that McCarthy was not terminated for cause.  This does not answer the question of whether McCarthy was, in fact, terminated for cause.  If McCarthy was terminated

for cause, then the settlement payment he received would not constitute payment for his imputed interest, and Plaintiff would not be entitled to recover her imputed interest.  On the other hand, if Plaintiff can establish that McCarthy was terminated without cause, then McCarthy's payment could properly be characterized as payment for his imputed interest, and Plaintiff would be entitled to recover.

At this juncture, since there is no evidence in the record suggesting the reasons for McCarthy's termination, we will deny summary judgment and allow the parties the opportunity to engage in discovery to more fully develop the facts and circumstances surrounding McCarthy's termination.  *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2725 (3d ed. 2010) (noting that courts may deny summary judgment until there is a fuller development of the facts).

Accordingly, the motions for summary judgment as to Plaintiff's breach of contract claim for failure to pay the imputed interest will be denied.

### 2. Severance Benefits

Plaintiff argues that the non-payment of her mandated severance benefits requires summary judgment to be entered in her favor.  The Sugalski Agreement provides, in relevant part:

> 5.1    In the event Employee's employment with Leasing Co is terminated by Leasing Co for a reason other than "cause" as defined in Paragraph 5.3, Leasing Co agrees to provide, and Employee agrees to accept, as the sole and exclusive remedy for the termination of Employee's employment without cause, the following severance benefits and arrangements:
>
> a.    Continuing bi-weekly payments of Employee's base salary for 3 months.
> b.    Any benefits Employee has purchased prior to termination will be

11

> continued for 3 months, if permitted under the terms of any
> applicable insurance policy.
>
> As a condition to receiving that severance compensation, Employee agrees to
> make no other claim against Leasing Co.

(Sugalski Agreement ¶ 5.1.)

Defendant concedes that Plaintiff was terminated without cause.  The only issue before the Court is whether Plaintiff's lawsuit against Defendant qualifies as a "claim against Leasing Co" that precludes Plaintiff from recovering her severance payment.

Plaintiff argues that she has not brought a claim against Leasing Co.  She argues that the instant lawsuit is against Defendant as the successor of Provident, the obligor under the terms of Plaintiff's employment contract and not against Leasing Co.  Plaintiff contends that there is no factual or legal basis for any purported identity between Provident and Leasing Co.  She points out that the plain language of the contract refers solely to "Leasing Co" and not to Provident, a signatory to the Sugalski Agreement.  Provident, the drafter of the contract, failed to broaden the scope of the provision to include claims against Provident and its successors.  (ECF No. 23-3)

Defendant argues that Plaintiff's distinction is devoid of any substantive meaning.  Defendant contends that Plaintiff's entire case against Defendant is premised on the doctrine of successor liability.  Defendant argues that Plaintiff's lawsuit against Defendant is tantamount to a "claim against Leasing Co."

The Sugalski Agreement was a contract between Plaintiff and Provident Bank of Maryland.  In 1998, when the contract was signed, Provident agreed to establish Leasing Co as a wholly-owned subsidiary.  In 2009, Defendant acquired Provident and became Provident's successor in interest. As such, Defendant is liable for Provident's obligations.  Plaintiff's lawsuit,

which seeks to enforce the terms of her employment contract, is therefore actionable against Defendant.  This much Defendant does not dispute.

The Sugalski Agreement specifically conditions Plaintiff's severance on her not making a claim against Leasing Co.  It does not condition her severance on her not making a claim against Provident.  Defendant's acquisition of Provident does not change the terms of the contract. Leasing Co was a wholly-owned subsidiary of Provident.  Ordinarily, a claim against Leasing Co would be distinct from a claim against Provident, or Defendant, Provident's successor.  *See Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 607 (D. Md. 2008) (acknowledging general principle of corporate law that parent and subsidiary are separate legal entities).  There are, however, circumstances where the parent and the subsidiary will be treated as one.  Defendant suggests that we should disregard the corporate form here and find that a claim against Leasing Co is legally equivalent to a claim against Provident.  *See Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 759-60 (D. Md. 2010) (describing circumstances under which a plaintiff may pierce the corporate veil).  Again we find ourselves in a position where because of the procedure chosen by the parties the facts necessary to address the issue are insufficient.  Moreover, although the parties have raised this issue, they have failed to properly address it in their memoranda. Accordingly, as with the issue of imputed interest, we will permit the parties to engage in discovery to more fully develop the facts surrounding this issue.

Plaintiff's Motion for Summary Judgment with respect to her severance pay is therefore denied.

### B.      Maryland Wage Payment and Collection Law

In the event that we determine that Plaintiff is entitled to receive her imputed interest and

severance pay, Plaintiff argues that she may collect these under the MWPCL.  Both Plaintiff and

Defendant move for summary judgment on this claim.

Under the MWPCL, if an employer fails to pay an employee, after two weeks have

elapsed from the date on which the employer is required to have paid the wages, the employee

may bring an action against the employer to recover the unpaid wages.[6]  Md. Code Ann. Lab. &

Empl. § 3-507.2(a).  An "Employer" includes any person who employs an individual in Maryland

or a successor of the person.  *Id*. at § 3-501(b).

 "Wage" is broadly defined as all compensation that is due to an employee for

employment and includes:  (i) a bonus; (ii) a commission; (iii) a fringe benefit; (iv) overtime

wages; or (v) any other remuneration promised for service.  § 3-501(c).  This list, which is not

exhaustive, simply identifies examples of different types of wages.  *Stevenson v. Branch Banking

& Trust Corp.*, 861 A.2d 735, 748 (Md. Ct. Spec. App. 2004) (citations omitted).  Wages consist

of "all compensation, and any other remuneration, that the employee was promised in exchange

for his work."  *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 671-72 (Md.

2001).  The Maryland Court of Appeals has established a bright line test, stating that once a

"bonus, commission or fringe benefit has been promised as a part of the compensation for

service, the employee would be entitled to its enforcement as wages."  *Id.* at 672-73.  An

employee's "right to compensation vests when the employee does everything required to earn the

---

[6]  In addition, if a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding three times the wage, and reasonable attorney's fees and other costs.  Md. Code. Ann. Lab. & Empl. § 3-507.2(b).  Plaintiff's Complaint seeks damages equal to three times the value of the imputed interest and severance payments wrongfully withheld.

wages." *Medex v. McCabe*, 811 A.2d 297, 305 (Md. 2002).

As a threshold matter, Defendant argues that neither it nor Leasing Co is an "Employer" as defined by the MWPCL.  Defendant argues that since Sugalski resides and works in Pennsylvania not Maryland, she is not entitled to bring this claim.  The MWPCL defines an employer as "any person who employs an individual in the State or a successor of the person." Md. Code. Ann. Lab. & Empl. § 3-501(a).  The statute does not require that an employee reside or work in Maryland to bring a cause of action.

There is no dispute that Defendant and its predecessor, Provident, employ workers within the state of Maryland.  (Def.'s Answer ¶¶ 10, 13, ECF No. 2.)  Moreover, the evidence establishes that Defendant, as the successor to Provident, was Plaintiff's employer.  (*See* Def.'s Resp. Ex. I, ECF No. 24 ("[Y]our final date of active employment with M&T Bank will be July 3, 2009."); Pl.'s Mot. Summ. J. Ex. J, ECF No. 22 ("Provided that your employment with Provident Bank has not been terminated . . . .").)

We are satisfied that Defendant is an employer here subject to the MWPCL.

     1.    *Imputed Interest*

Plaintiff is not entitled to summary judgment with respect to the imputed interest in her breach of contract claim.  *See supra* § III(A)(1).  Accordingly, we must deny her request for summary relief under the MWPCL.  The Maryland Court of Appeals has barred recovery where remuneration is subject to any additional unfulfilled promises or conditions.  *See Catalyst Health Solutions, Inc. v. Magill*, 995 A.2d 960, 972 (Md. 2010).  In *Magill*, the employee did not satisfy all of the agreed-upon conditions to exercise his stock options because he was not employed on the vesting date as required in his employment contract.  *Id.*  The court found that the stock

options were not vested wages within the MWPCL. At this juncture, it is unclear whether Plaintiff may recover the imputed interest as a "wage" because the record is not sufficiently developed such that we can determine whether Plaintiff is owed the imputed interest at all. The condition precedent to Plaintiff's recovery of imputed interest remains unresolved.

Defendant argues that in any event the imputed interest is not a wage within the purview of the MWPCL. Plaintiff responds that this issue has already been resolved in McCarthy's earlier lawsuit. *See Provident Bank*, 383 F. Supp. 2d at 858. In that lawsuit, Provident sought to dismiss the complaint by arguing that McCarthy's imputed interest was not a wage. *Id.* at 861. Provident argued that the imputed interest payment was not a wage because McCarthy was not entitled to the payment if he breached the non-compete provision in his employment contract. Provident maintained that this payment did not fall within the MWPCL because termination payments that are dependent upon conditions other than the employee's efforts are not wages. Provident relied upon *Stevenson* for this proposition. In *Stevenson*, the court found that the MWPCL did not apply because the employee's termination compensation was payment for her covenant not to compete, rather than for work performed:

> Unlike severance pay that is tied to length of employment, Stevenson's contractual severance benefit compensates her for the nearly two years remaining in her three year employment term. The terms of the employment contract make it clear that Stevenson's Termination Compensation is payment for her agreement not to compete following termination. Stevenson's right to receive Termination Compensation is explicitly tied to her duty not to compete with the bank after the end of her employment.

*Stevenson*, 861 A.2d at 749-50.

The court in the McCarthy lawsuit rejected this argument because the McCarthy Agreement does not condition McCarthy's right to the imputed interest on his adherence to the

16

non-compete provision.  *Provident Bank*, 383 F. Supp. 2d at 861.  Provident's exclusive remedy

for McCarthy's breach of the non-compete covenant was to obtain an injunction, not forfeiture of

the imputed interest.  *Id.* (citing McCarthy Agreement ¶ 7.3).[7]  The court found that McCarthy's

entitlement to the imputed interest was conditioned solely upon his performance.  *Id.*  Since an

employee's right to compensation vests when the employee does everything required to earn the

wages, McCarthy had sufficiently pleaded a MWPCL claim.  *Id.*

Plaintiff argues that like the McCarthy Agreement, her employment contract included the

incentive payment of imputed interest conditioned on her continued employment with Provident

at the time Provident made an imputed interest payment to McCarthy.  Plaintiff argues that the

imputed interest is a wage enforceable under the MWPCL.

Defendant argues that Plaintiff misconstrues *Provident*.  First, Plaintiff's reliance on

*Provident* as dispositive on this issue misplaced since *Provident* was ruling on a motion to

dismiss and we are addressing a motion for summary judgment.  We agree with Defendant on

this point.  Second, Defendant argues that Plaintiff's imputed interest is not a wage because her

entitlement to payment depends on a condition other than her own performance.  *Provident*, 383

F. Supp. 2d at 861 ("If termination payments are dependent upon conditions other than the

employee's efforts, the MWPCA is inapplicable.") (citing *Whiting-Turner*, 783 A.2d at 671-72).

---

[7] The Restrictive Covenants section of the McCarthy Agreement states, in relevant part:

If Employee breaches any of Employee's obligations in this Section, Employee
agrees that Leasing Co may enforce this Agreement by seeking an injunction, as well
as pursuing all other remedies, and Employee agrees to pay all of Leasing Co's
attorneys' fees and costs incurred in such enforcement.

(McCarthy Agreement ¶ 7.3.)

The payment by Provident to McCarthy for his imputed interest was tied to his own performance. *Id.* ("McCarthy's entitlement to the Imputed Interest payment was conditioned solely upon his performance.")  On the other hand, according to Defendant, Plaintiff's right to her imputed interest is dependent on a condition that has nothing to do with her performance as an employee. Plaintiff may only receive her payment if McCarthy was terminated for a reason other than cause and paid his imputed interest.

Defendant's position finds no support in Maryland case law.  Defendant takes an isolated quote from the *Provident* opinion out of context and argues as if it is controlling.  *See Provident*, 383 F. Supp. 2d at 861 ("If termination payments are dependent upon conditions other than the employee's efforts, the MWPCA is inapplicable.") (citing *Whiting-Turner*, 783 A.2d at 671-72). To the extent the *Provident* court concludes that this rule is a proper construction of MWPCL case law, we respectfully disagree.  We see nothing in *Whiting-Turner* to suggest that the MWPCL is inapplicable where conditions for payment are not wholly dependent on the employee's individual efforts.  The part of *Whiting-Turner* that is cited by *Provident* interprets the section of the MWPCL dealing with payments upon the termination of an employee.[8]  The *Whiting-Turner* court went on to say that wages which must be paid upon termination of employment, "consist of all compensation, and any other remuneration, that the employee was promised in exchange for his work."  783 A.2d at 671-72.

There is no requirement that the promise the employer makes as part of the compensation

---

[8] Section 3-505(a) states, in part:  "[E]ach employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."  Md. Code Ann. Lab. & Empl. § 3-505(a).

for service be entirely related to the employee's individual efforts.  Such an interpretation would render meaningless the MWPCL where an employee, such as Plaintiff, has been promised compensation, the payment of which is partly determined by external factors.  Defendant's "employee's efforts" requirement disregards the plain language of the MWPCL, which defines a wage to include all "remuneration promised for service."  *See* Md. Code Ann. Lab. & Empl. § 3-501(c).

Plaintiff provided services to Leasing Co.  In exchange for those services, and as an incentive for her to continue to provide those services, Provident agreed to pay Plaintiff an imputed interest if Plaintiff was employed by Provident when McCarthy was paid his imputed interest.  Simply put, Plaintiff's promised imputed interest payment was remuneration promised for services.  She continued to work for Provident in reliance on this promise.  It is immaterial that the payment to Plaintiff was also tied to McCarthy's efforts.

We also find that Defendant reads the *Provident* court's "employee's efforts" language without regard for its proper context.  The court employed this phrase as it distinguished the McCarthy Agreement from the employment agreement in *Stevenson*.  *Provident*, 383 F. Supp. 2d at 861.  In *Stevenson*, the employee's termination compensation was tied to her agreement not to compete, rather than to her work performed.  *See* 861 A.2d at 750 ("The Termination Compensation was promised to Stevenson in exchange for the 23 months she agreed to refrain from competing with the bank, not for the 13 months she actually worked at BB & T.").  If Stevenson violated the non-compete provision, she forfeited her money.  McCarthy's entitlement to his payment was contingent on his performance while working for Provident.  *Provident*, 383 F. Supp. 2d at 861.  The court used the "employee's efforts" language to distinguish between

compensation tied to performance on the job and compensation tied to a post-employment non-compete provision.  The court never said that a payment which is partly dependent on factors external to an employee's efforts is not recoverable as a wage.  Similarly, we will not use the "employee's efforts" language to create an obstacle to an employee's cause of action that is not provided in the statute itself.

An employee's "right to compensation vests when the employee does everything required to earn the wages."  *Medex*, 811 A.2d at 305; *Stevenson*, 861 A.2d at 747.  If Plaintiff later proves that she is entitled to the imputed interest, *see supra* § III(A)(1), the right to her compensation would have vested forty-five days after Provident reached its settlement with McCarthy.  On that date, Plaintiff had done everything required to earn the wages:  she was still employed by Leasing Co and David McCarthy was paid his imputed interest.

Accordingly, Plaintiff's and Defendant's Motions for Summary Judgment as to Plaintiff's claim for the imputed interest under the MWPCL are denied.

### 2.    *Severance Benefits*

Plaintiff and Defendant both move for summary judgment with respect to Plaintiff's claim for severance benefits under the MWPCL.

The MWPCL does not explicitly mention severance pay within its definition of wages.  Md. Code Ann. Lab. & Empl. § 3-501(c).  Nevertheless, the Maryland Court of Special Appeals has concluded that severance benefits may constitute wages:

> Given the broad language of the statute and its remedial purpose, we conclude that the scope of Maryland's Wage Payment Act extends to the type of severance pay that represents deferred compensation for work performed during the employment. Thus, a severance benefit that is based on the length and/or nature of the employee's service, and promised upon termination, may be recoverable under the Wage

Payment Act.

*Stevenson*, 861 A.2d at 749.  In *Stevenson*, however, the employee's receipt of her severance benefits was contingent on her agreement not to compete following termination.  *Id.*  Section 3-505(a) requires employers to pay "all wages due for work that the employee performed before the termination of employment."  Md. Code Ann. Lab. & Empl. § 3-505(a).  Since the severance was tied to a non-compete, rather than to her employment, the employee could not have "perform[ed] all the work necessary to earn" the severance package until after her thirteen-month employment ended.  *Stevenson*, 861 A.2d at 750.  The court, therefore, found that while the non-payment of a severance package may be grounds for relief under the MWPCL, in this instance the employee's termination compensation was not recoverable.

In contrast, in *Gresham v. Lumberman's Mutual Casualty Co.*, the severance to which the employee was entitled related solely to his service while employed.  426 F. Supp. 2d 321, 324 (D. Md. 2005).  The severance provision in his employment agreement stated "Severance Protection-One year base salary will be paid if terminated without cause."  *Id.* at 322.  The employer never contended that the employee engaged in any conduct that constituted cause for discharge.  *Id.* at 324.  Like the instant case, the termination was a result of a corporate sale.  *See id.* at 322-23.  Relying on *Stevenson*, the court found that the employee's severance benefits constituted wages within the meaning of the MWPCL.  *Id.* at 324.  The severance payment was deferred compensation for work performed prior to termination.

As with the employee in *Gresham*, Plaintiff was offered the severance benefits for her satisfactory performance while employed by Provident, not for a post-termination promise not to compete.  This is precisely the "type of severance pay that represents deferred compensation for

work performed during the employment." *See Stevenson*, 861 A.2d at 749.  Plaintiff is entitled to her severance pay if she was terminated for a reason other than cause and does not bring any other claim against Leasing Co.  As discussed above, Plaintiff has satisfied these conditions precedent.

Defendant argues that Plaintiff's severance pay is not a wage because:  1) it was not based upon the nature or length of Plaintiff's service; and 2) it was conditioned on actions in the future.  These arguments are without merit.

Defendant cites to *Stevenson*—"a severance benefit that is based on the length and/or nature of the employee's service"— and extrapolates from this language a requirement that severance must be an accrued benefit in order to be recoverable.  We find no such precondition.  Plaintiff's severance is a wage if it represents deferred compensation for work performed during the employment.  *See Stevenson*, 861 A.2d at 749; *Gresham*, 426 F. Supp. 2d at 324.  The statute imposes no requirement related to the specific nature or length of employment before severance compensation may be recovered.  Provident promised Plaintiff severance pay as part of Plaintiff's original employment agreement and such pay was a form of deferred compensation.

Defendant argues that severance pay does not qualify as a wage if it is conditioned upon any actions in the future.  Since Plaintiff's severance is dependent on her being terminated without cause and her agreement not to bring a claim against Leasing Co, Defendant argues that her severance is not a wage.  Defendant's reliance on *Stevenson* for this argument is misplaced.  The MWPCL requires an employer to pay "all wages due for work that the employee performed before the termination of employment."  Md. Code Ann. Lab. & Empl. § 3-505(a).  Based on this section, *Stevenson* held that the statute extends to severance pay that represents deferred

22

compensation for work performed during the employment.  861 A.2d at 749.  Severance pay which is promised in an employment agreement and conditioned upon future events fits within this definition as long as the compensation sought was for work performed prior to termination. In *Gresham*, the employee's receipt of his termination compensation was contingent on the employer terminating him without cause.  *See Gresham*, 426 F. Supp. 2d at 324.  The court found that the employee was entitled to recover these benefits.  We have concluded that Plaintiff has not brought a claim against Leasing Co.  If we accepted Defendant's argument and concluded that severance pay is not a wage if it is conditioned on any future action, Plaintiff could not recover until there was no longer a possibility of her bringing a claim against Leasing Co. Defendant's "no future action requirement" finds no support in the statute or the case law. Moreover, such an interpretation would invite employers to insert similar clauses into their employment contracts so as to circumvent the broad remedial objectives of the MWPCL.

Plaintiff may recover her severance pay because it constitutes deferred remuneration for work performed during the employment.  As such, Plaintiff's Motion for Summary Judgment on this claim will be granted and Defendant's Motion will be denied.

## IV.   CONCLUSION

For all of these reasons, Plaintiff's Motion is granted in part and denied in part, and Defendant's Motion is denied.

An appropriate Order follows.

BY THE COURT:

**/s/ _R. BARCLAY SURRICK, J._**

23